IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WESLEY JAMES CHRISTOPHER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Civil Action No. 21-953 ) ) |
| KILOLO KIJAKAZI, *Acting Commissioner of Social Security*, | ) ) ) ) |
| Defendant. | |

ORDER

AND NOW, this 13th day of September 2022, the Court, having considered the parties' summary judgment motions, will order judgment in Defendant's favor.[1] The agency's final decision wherein the Administrative Law Judge ("ALJ") denied Plaintiff's application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq.* is supported by substantial evidence. Accordingly, it will be affirmed. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (citing 42 U.S.C. § 405(g)).[2]

---

[1]   Defendant has requested judgment in her favor *and* that costs be taxed against Plaintiff. The latter request is unargued; therefore, the Court's Order excludes an award of costs. *See Pa. Dep't of Pub. Welfare v. U.S. Dep't of Health & Hum. Servs.*, 101 F.3d 939, 945 (3d Cir. 1996) (explaining that "conclusory assertions" fail to raise issues).

[2]   Plaintiff has challenged the ALJ's decision wherein she found him to be not disabled for his SSI application. He has raised several arguments in furtherance of his challenge to the underlying decision which are reducible to two main arguments: (1) that the ALJ failed to address, or erred in her consideration of, the medical opinion evidence and (2) that the ALJ failed to account for his moderate mental limitations with corresponding functional limitations in her finding of his residual functional capacity ("RFC"). Because of these errors, Plaintiff argues, the ALJ's decision is not supported by substantial evidence. As explained herein, the Court finds no such errors in the ALJ's decision. The ALJ's decision is supported by substantial evidence and will be affirmed.

The Court's review is "plenary" as to "legal conclusions reached by the Commissioner," and the Court reviews findings of fact for "substantial evidence," *i.e.*, "such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (citations omitted). ALJs determine disability using a five-step sequential evaluation whereby an ALJ "consider[s] . . . whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work." *Roberts v. Astrue*, No. 02:08-CV-0625, 2009 WL 3183084, at *2 (W.D. Pa. Sept. 30, 2009) (citing 20 C.F.R. §§ 404.1520, 416.920; *Burnett v. Comm'r of Social Security*, 220 F.3d 112, 118—19 (3d Cir. 2000)). The fourth and fifth inquiries require a determination of a claimant's RFC. The RFC is "the most [the claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). ALJs must "assess [a claimant's] [RFC] based on all of the relevant medical and other evidence." *Id.* § 416.945(a)(3).

Plaintiff's first argument is that the ALJ failed to consider all the medical opinion evidence and erred in her consideration of the findings and opinions of Dr. Stacy Golman, Psy.D. For applications, like Plaintiff's application, that are filed on or after March 27, 2017, ALJs must evaluate the persuasiveness of such opinions. *Id.* § 416.920c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."). ALJs assess persuasiveness using five factors, but they are only required to explain their consideration of the two most important factors which are supportability and consistency. *Id.* § 416.920c(b)(2). Plaintiff argues that the ALJ failed to assess the persuasiveness of medical opinion evidence offered by: Plaintiff's treating psychologist, Dr. John Carosso; his treating psychiatrist, Dr. Hai Wei Wang; another treating psychologist, Dr. Richard Hoffman; and two mental health counselors, David DeWitt and Stephen Neel. Critically, however, the records prepared by these medical sources and described by Plaintiff as being medical opinions fall into a different category of evidence.

Medical opinion evidence consists of a statement or statements "from a medical source about what [a claimant] can still do despite [his] impairment(s) and whether [he] ha[s] one or more impairment-related limitations or restrictions in the abilities listed in paragraphs (a)(2)(i)(A) through (D)." 20 C.F.R. § 416.913(a)(2). Evidence from a medical source that is neither an opinion nor objective medical evidence, *e.g.*, "medical signs" or "laboratory findings," is categorized as "Other medical evidence." *Id.* § 416.913(a)(3). This category of evidence "includ[es] judgments about the nature and severity of [the claimant's] impairments, [his] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." *Id.*

The evidence identified by Plaintiff that was produced by Dr. Carosso, Dr. Wang, Dr. Hoffman, Mr. DeWitt, and Mr. Neel is other medical evidence, not opinion evidence. Dr. Carosso's 2018 re-evaluation of Plaintiff addressed his mental status for initiation of psychotherapeutic treatment in the hope of, *inter alia*, reducing anxiety and depression and forging relationships outside of family. (R. 311—24). Dr. Carosso did not opine on Plaintiff's ability to do work-related activities therein. Likewise, the exhibit Plaintiff characterizes as Dr.

Wang's opinion is merely a treatment record from an intake appointment wherein Plaintiff sought to obtain therapy. (R. 409). The same goes for Mr. DeWitt's notes from Plaintiff's August 3, 2020 appointment. (R. 402). Mr. DeWitt documented his impressions from that appointment, *e.g.*, that Plaintiff's speech was pressured and his affect "flat and blunted," but did not offer an opinion on how Plaintiff would be functionally limited in a work environment. (R. 402—03). Mr. Neel similarly assessed Plaintiff with "Social anxiety Disorder" (R. 348) and made observations related thereto (*e.g.*, "He presents with a very flat affect and does not demonstrate a lot of emotion"). (R. 347—48). After Plaintiff had been in counseling with Mr. Neel for ten months, Mr. Neel performed a mental status evaluation and noted that Plaintiff needed to be encouraged to "get out of the house" because of his difficulty engaging with people. (R. 374—79). But, again, Mr. Neel did not opine as to Plaintiff's ability to, for instance, "maintain[] concentration, persistence, or pace" in a work environment. 20 C.F.R. § 416.913(a)(2)(i)(B).

Because these exhibits cited by Plaintiff were not medical opinions, the ALJ was not required to assess their persuasiveness pursuant to Section 416.920c. To the extent that this evidence was relevant to a determination of Plaintiff's RFC, the ALJ considered it. For instance, the ALJ considered that these exhibits tended to show that Plaintiff had "average intellectual functioning, normal memory, and normal attention," despite his anxious mood and difficulty with insight and judgment. (R. 22). The ALJ also considered that these records showed that Plaintiff did not require "psychotropic medications" to manage his symptoms. (*Id.*). As to Dr. Golman's opinion, Plaintiff has argued that the ALJ erred in her assessment of that opinion's persuasiveness. However, the ALJ thoroughly explained her consideration of Dr. Golman's findings and opinions and why she found them to be "not persuasive." (R. 23). Dr. Golman opined that Plaintiff had a "marked limitation in interacting appropriately with the public, supervisors, and coworkers;" and a "marked limitation in responding appropriately to usual work situations and changes in a routine work setting." (R. 23, 365). Considering this, the ALJ found that Dr. Golman had "overstate[d] the claimant's functional limitations" and that the limitations were unsupported "by the objective medical evidence including Dr. Golman's own examination showing only a tense and anxious mood and affect," but "adequate manner of relating" with other normal findings. (R. 23). The ALJ went on to address consistency and explained that Dr. Golman's opinions were "inconsistent with the claimant's medical treatment history," the State agency psychological consultants' findings, and Plaintiff's daily activities. (*Id.*). Plaintiff suggests that the ALJ should have considered that Dr. Golman had the opportunity to examine Plaintiff whereas the State agency psychological consultants had no similar opportunity; however, ALJs are not required to explain their consideration of a source's "Relationship with the claimant." 20 C.F.R. §§ 416.920c(b)(2), (c)(3). Because the ALJ adequately supported her evaluation of Dr. Golman's opinions and explained her consideration of supportability and consistency therein, the Court finds no fault in her consideration of that evidence.

In addition to contesting the ALJ's consideration of the medical opinion evidence, Plaintiff has argued that the ALJ's formulation of his RFC is deficient insofar as she failed to

3

convert her findings of moderate mental limitations at step three of the five-step inquiry into corresponding functional limitations for the RFC.  Although an RFC assessment should reflect an ALJ's paragraph-B findings, as the ALJ acknowledged in her decision, an ALJ's assessment of a claimant's "broad area[s] of functioning" for the "paragraph B" criteria of listings impairments that are evaluated at step three is separate from the RFC determination.  (R. 18, 20).  In this matter, the ALJ first found Plaintiff to be moderately limited in three areas—"interacting with others;" "concentrating, persisting, or maintaining pace;" and in "adapting or managing oneself."  (R. 19).  Then, for Plaintiff's RFC, the ALJ articulated non-exertional limitations to include: "the claimant is able to understand, remember and carry out simple instructions and perform simple routine tasks such as those akin to the requirements of work at the SVP 1 or 2 levels;" "[t]he claimant requires a low stress environment defined as no production rate pace work, but rather goal-oriented work with occasional and routine changes in the work setting;" and "[t]he claimant cannot have work-related interaction with the public and can have only occasional interaction with coworkers and supervisors."  (R. 20).  To the extent Plaintiff argues that Dr. William Anzalone's markedly-limited finding for Plaintiff's ability to interact with the general public was contrary to the ALJ's moderate interactional limitation at step three, the more restrictive finding was accommodated in the decision.  These non-exertional RFC limitations were presented to the vocational expert ("VE") at Plaintiff's hearing to ascertain what jobs might be available to him, but the ALJ did not present her finding of moderate limitations in three of four broad areas of functioning at step three to the VE.

      Plaintiff argues this was error and further suggests that Plaintiff's moderate mental limitations should have been presented to the VE in terms of off-task time, *i.e.*, the ALJ's moderate mental limitations in interacting with others and concentrating should have been presented as off-task limitations of at least 20%.  (Doc. No. 11, pg. 17).  Without that information, argues Plaintiff, the VE's responses to the ALJ's hypotheticals cannot constitute substantial evidence because the questions failed to accurately reflect Plaintiff's capacity for sustained work.  The United States Court of Appeals for the Third Circuit has considered how an ALJ's findings at step three ought to impact his or her formulation of a claimant's RFC and has held "that no incantations are required at steps four and five simply because a particular finding has been made at steps two and three."  *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019).  Put another way, an ALJ's findings at step three are relevant to the RFC determination, but the language that an ALJ uses to describe a claimant's RFC limitations need not match the language employed earlier.  *Id.*

      In *Hess* the Court further considered whether a "simple tasks" limitation in the claimant's RFC was appropriate after the ALJ found that the claimant had "moderate" difficulties in "concentration, persistence, or pace."  *Id*. at 210.  The Court explained that "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'"  *Id.* at 211.  The Court reiterated that the "'valid explanation' rule remains the law in [the] circuit."  *Id.* at 212.

4

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 10) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 16) is GRANTED as specified above.

s/ Alan N. Bloch<br>United States District Judge

ecf:   Counsel of Record

---

Applying the valid-explanation rule, the Court finds that the ALJ did not err in her formulation of Plaintiff's RFC in this matter.  In finding that Plaintiff had moderate mental limitations in three areas of functioning at step three, the ALJ considered evidence that, among other things: Plaintiff was found to have an anxious mood, but still demonstrated cooperative behavior and could go shopping and visit with family (R. 19); reported difficulty concentrating and finishing tasks, but demonstrated "normal memory" and "normal attention" on exam (*id.*); and demonstrated "guarded behavior and poor insight and judgment," but could "prepare[] meals, perform[] household chores, care[] for his personal needs, drive[], go[] grocery shopping, and attend[] his scheduled appointments."  (*Id.*).  In her evaluation of the mental impairments evidence for Plaintiff's RFC, the ALJ considered Plaintiff's reported difficulties with "agoraphobia, paranoia, and extreme stress and anxiety in social situations."  (R. 21).  She further considered that Plaintiff's mother indicated that "he experiences extreme anxiety in public or around people."  (*Id.*).  She further considered Plaintiff's treatment for mental impairments and psychological evaluations evidence which indicated that Plaintiff had an "anxious mood," "poor insight and judgment," "avoidant eye contact," and "guarded behavior." (R. 21—22).  However, this evidence also indicated that Plaintiff consistently had "cooperative behavior," could "hold an appropriate conversation," and demonstrated memory and attention within normal limits.  (*Id.*).  Based on that evidence, as well as Plaintiff's significant daily activities (*e.g.*, driving, going shopping, attending appointments) and the State agency psychological consultants' findings (*e.g.*, that Plaintiff "could meet the basic mental demands of simple skills and/or tasks on a sustained basis"), the ALJ determined that limitation to "simple routine tasks," a "low stress environment," no "work-related interaction with the public," and "only occasional interaction with coworkers and supervisors" would adequately accommodate Plaintiff's proven limitations.  (R. 22—24).  The Court finds that to be a valid explanation and will therefore affirm.